## Richmond.

### English-Ott Lumber Company, and others, v. Bettie Waddle, and others.

#### November 18, 1926.

1. BOUNDARIES—*Location of Range of Mountains—Evidence Held to Establish Contention of Respondents as to Location—Case at Bar.*—The instant case was an injunction suit to enjoin a lumber company from cutting and removing timber. But the whole controversy hinged upon the true location of a range of mountains referred to in the title deeds of respondents and spoken of in the evidence as "Buckhorn mountain." The lower court granted a perpetual injunction, and, on appeal, the decree of the lower court was reversed and the cause remanded to the circuit court with directions to impanel a jury to determine the true boundary. A petition to rehear was granted. The petition for rehearing and maps filed therewith and the reargument, both orally and by briefs, very much clarified the situation, and a trial by jury was not therefore deemed necessary. There was no conflict in the description contained in the deeds of any of the tracts of land involved. The great weight of the testimony was to the effect that the mountain range commonly known as "Buckhorn mountain" in the community was that contended for by the respondents, and was so considered by the parties to the title deeds filed as exhibits with the pleadings, at the time the deeds were executed, and all the inferences to be fairly drawn from the deeds supported this conclusion.

   *Held:* That the decree granting the injunction should be reversed and a decree entered dissolving the injunction and dismissing complainant's bill.

2. TREES AND TIMBER—*Suit to Enjoin Cutting and Removing Timber—Boundaries—Burden of Proof on Complainants—Case at Bar.*—In the instant case, a suit to enjoin the cutting of timber, where the question at issue was the boundaries of complainants' and respondents' tracts, the burden was upon the complainants to establish their title to the land they contend is theirs, and yet a strict adherence to the calls of their own title papers failed to show that any of the land in question was ever conveyed or intended to be conveyed to complainants.

3. BOUNDARIES—*Dispute as to Which of Two Mountain Ranges was Known as Buckhorn Mountain—United States Government Topographical Map.*— In the instant case, where the question at issue was the location named in title deeds as "Buckhorn mountain," a United States topographical map of the mountain section and surroundings involved in the controversy was filed in evidence and "Buckhorn mountain" as shown on this map was the mountain contended for by respondents. The mountain commonly known as Buckhorn mountain in the community was that contended for by the respondents and was so considered by the parties to the title deeds, and all the inferences fairly drawn from the deeds supported this conclusion. The burden of proof was upon the complainants.

*Held:* That the evidence failed to establish the contention of complainants as to the location of "Buckhorn mountain."

Appeal from a decree of the Circuit Court of Wythe county. Decree for complainants. Respondents appeal.

*Reversed.*

The opinion states the case.

*Jackson & Henson, M. P. Farrier,* and *Barnes Gillespie,* for the appellants.

*W. B. Kegley* and *Martin Williams,* for the appellees.

CHICHESTER, J., delivered the opinion of the court.

The controversy in this case is over the title to certain timber on a large boundary of land, in Bland and Tazewell counties, containing 4,165.35 acres, which the English-Ott Lumber Company, hereafter (with the other appellants) called respondents, purchased from B. T. Johnson on April 19, 1920, who had theretofore purchased it from the heirs at law of Erastus G. Harman.

In the early part of the year 1922, the lumber company commenced cutting timber on this tract of land.

Whereupon, the appellees, hereafter called complainants, filed their bill in chancery in the Circuit Court of Bland county, claiming title to a portion of the land upon which the timber, which had been sold to the lumber company, grew, and praying for an injunction to enjoin the lumber company from cutting any of the timber growing on the land claimed by the complainants. The court granted a temporary injunction, and after the lumber company and others, made defendants, had filed their joint answer to the bill, the cause was moved to the Circuit Court of Wythe county, and therein proceeded with to a conclusion.

There were numerous exhibits, chiefly consisting of deeds under which the litigants claimed title, filed with the bill and answer, and after voluminous depositions had been taken, the Circuit Court of Wythe county perpetuated the injunction, by decree, on January 20, 1925. This decree, upon appeal, is before this court for review.

While the record is apparently greatly complicated, there is really no conflict in the description contained in the deeds of any of the tracts of land involved. The whole controversy hinges upon the true location of a range of mountains referred to in the deeds and spoken of in the evidence as Buckhorn mountain.

It will add very much to the understanding of the controversy here, which in effect is a controversy to settle the boundary lines of the respective parties, to refer to the accompanying map of the tracts involved, and to point out by reference thereto the lands claimed respectively by these parties.

In 1828 Henry O. Middleton owned all the lands now owned by litigants here and several thousands of acres surrounding, in addition, so that he is the common source of title of all parties.   The respondents claim under two deeds, the first from Henry O. Middleton to Erastus G. Harman, dated May 6, 1844.   By this deed the tract of land containing 1,500 acres and lying immediately south of the mountain range, designated on the map as East River mountain, was conveyed.   The

description of that tract as contained in the deed is as follows: "Commencing twenty poles south of a spring and chestnut tree, eighty poles eastwardly from old John Compton's lick log, where he formerly salted his stock; thence eastwardly along the south side of a spur of the big ridge to opposite the west end of the lands of Isaac Pauley, purchased of said Middleton; thence a straight line to said Pauley's line, and with the same to the top of East River mountain; thence with the top of said mountain a westwardly course to opposite the southwest corner of the lands of said Harman and William Flummer; thence a south course 150 poles to a stake; thence a straight course to the beginning."

The second deed under which respondents claim is the deed from W. W. Harman to Erastus G. Harman, dated January 30, 1850 (Henry O. Middleton had previously conveyed this tract, along with the residue of the 75,000 acres owned by him and not theretofore sold to Erastus G. Harman, to H. B. Harman and others, who later conveyed the land, a part of which is now in controversy, to W. W. Harman), and, as stated, W. W. Harman conveyed to Erastus G. Harman by deed of January 30, 1850, a tract of land which respondents claim is the tract lying immediately south of the above described 1,500 acre tract, and which is designated on the map L. D. E. F. and described in the above mentioned deed as follows: "Beginning on said Erastus Harman's southwest corner of the land purchased from Henry O. Middleton on the south of East River mountain where said Harman deed calls for due south poles; thence south to the top of Buckhorn mountain, distance not known; thence with the top of said mountain an eastward direction to opposite the house Hickman Compton last resided in, now William W. Compton; thence north to Isaac Pauley's line and to said Erastus

G. Harman's lines, and with said Erastus G. Harman's line around to the beginning."

It will thus be seen that the south line of the 1,500 acre tract which lies to the south of East River mountain is the northern line of the tract of land conveyed by W. W. Harman to Erastus G. Harman by the deed of January 30, 1850.

Complainants' claim of title is based on a deed from W. W. Harman to Russell Stowers and Cobe Stowers, dated March 6, 1880, conveying the tract of land lying on the south side of Buckhorn mountain and on the waters of Clear Fork of Wolf Creek, and bounded as follows: "On the north by the south line of a tract of land belonging to E. G. Harman's deceased heirs, on the south by the north lines of the lands belonging to the parties of the second part, and on the east by George Steel's west line, and on the west by the east line by a survey formerly owned by Hiram Peery."

The contention of complainants is that the northern boundary of this tract extends to the north of the mountain marked on the map "Pine Knob" and up to the mountain ridge designated as Big Ridge, lying about midway between East River mountain and Pine Knob, while respondents contend that the Buckhorn mountain extends from the letter "D" on the east of the map to "H"; Pine Knob being a part of the Buckhorn Ridge, and that the line passing through Pine Knob is the northern boundary of the complainants' land.

The conflict in the testimony arises as to whether the mountain range from "D" to "E" is Buckhorn mountain or whether the ridge branching off at the south side of Big Ridge to the east and west is Buckhorn mountain.

[1] Not only is the great weight of the testimony to the effect that the mountain range from "D" to "E" is

commonly known as Buckhorn mountain in the community, and was so considered by the parties to the title deeds filed as exhibits with the pleadings, at the time the deeds were executed, but all the inferences to be fairly drawn from the deeds, as will hereafter appear, support this conclusion.

If we take the description of the tract lying south of the 1,500 acre tract from the deed from W. W. Harman to Erastus G. Harman, we find that the beginning point "L" on the map is undisputed. The next call is south to the top of Buckhorn mountain "distance not known." The next call is with the top of Buckhorn mountain eastward to opposite the house Hickman Compton last resided in. That is, Buckhorn mountain is the southern boundary of the tract conveyed, and the land conveyed lies to the north of the top of Buckhorn mountain. If the mountain designated as Big Ridge is Buckhorn mountain, as claimed by complainants, it is obvious from an examination of the map that the land lies north of the mountain designated as Big Ridge, and the land conveyed to Erastus G. Harman by W. W. Harman is practically the same land as that conveyed to Erastus G. Harman by Henry O. Middleton, and this in spite of the fact, as we have heretofore pointed out, the southern boundary of the land conveyed by Henry O. Middleton to Erastus G. Harman is the northern boundary line of the land conveyed by W. W. Harman to Erastus G. Harman.

If the contention of the complainants is correct that the mountain designated on the map as Big Ridge is Buckhorn mountain, it is apparent that no other call in the deed from W. W. Harman to Erastus G. Harman can be reached in a survey of this tract. It will be noted that the calls in the deed are "with the top of Buckhorn

mountain in an easterly direction to opposite the house Hickman Compton last resided in, now Wm. W. Compton." There is no dispute about the location of the Hickman Compton house. Its approximate location, in the southeastern corner of the map, shows that it is not opposite the range of mountains claimed by the complainants to be Buckhorn, and that there is a range of mountains between, which respondents claim is the Buckhorn range.

As further evidence of the fact that the Buckhorn mountain is the mountain range as contended for by respondents, W. W. Harman, the grantor of the tract of land just referred to, and the grantor of complainants, conveyed a tract of land to George Steel by deed of October 30, 1850, and in this deed he unquestionably locates the range of mountains as contended for by respondents as Buckhorn mountain. Steel's line lies south of Buckhorn mountain as designated on the map, and runs to its top, and thence with the top of Buckhorn mountain to Lynn hollow. There is no conflict in the evidence as to where Lynn hollow is, or where Lynn branch breaks through the mountain, and neither Lynn branch nor Lynn hollow are in any way connected with Big Ridge. It is, therefore, certain that when W. W. Harman used the words in this deed, "the top of Buckhorn mountain," he was referring to the mountain which respondents claim now is Buckhorn mountain.

This same W. W. Harman conveyed a tract of land to Hirma Perry on the 18th of September, 1853; in that deed this description appears: "Beginning at a chestnut oak, three gums and a birch on the east bank of a large branch on a rocky gap of Buckhorn mountain which empties into Clear fork between . . . . Stowers and George Steel." There is no

conflict in the evidence about the location of this branch, designated on the map, as is also Clear Fork creek, and it nowhere touches Big Ridge.

The surveyor, F. H. Cox, who testified in the case, found the gap and the branch as designated, and there is no dispute about the fact that this branch runs through a gap in the mountain range which respondents claim is Buckhorn mountain. Thus, it will be seen that W. W. Harman in his deed to Erastus G. Harman fixed the southern line of the tract of land therein conveyed as the top of Buckhorn mountain, and in the same year, in his deed to George Steel, he fixed the northern boundary of the Steel tract as Buckhorn mountain, and three years later, in the deed to Hiram Pecry, he fixed the northern boundary of this tract as Buckhorn mountain. There could be no doubt about the fact that he designated the same mountain range on each occasion' as Buckhorn mountain, and it is equally certain that he designated the range "Buckhorn mountain" as contended for by respondents, because he referred to Lynn branch where it breaks through the mountain, in the George Steel deed, and to the large branch on a rocky gap, in the Hiram Pecry deed, both of which branches nowhere touch Big Ridge, but do break through the mountain ridge which respondents claim is Buckhorn mountain.

W. W. Harman was also the grantor in the deed to Russell Stowers and Cobe Stowers dated March 6, 1880, under which the complainants claim. This deed to Russell Stowers and Cobe Stowers conveys to them land on the south side of Buckhorn mountain. In W. W. Harman's deeds to Perry and Steel it has been shown that the mountain he designated as Buckhorn mountain was the mountain through which a large

branch broke, and through which Lynn branch and Lynn hollow also broke, and that Steel's land only ran to the top of the range.

There can be little doubt from the foregoing what mountain range W. W. Harman, who conveyed the lands to E. G. Harman, to Peery, to Steel and to Russell and Cobe Stowers, referred to as Buckhorn mountain. He had conveyed the lands to Erastus G. Harman, the boundaries of which are the subject of this controversy, and had in the Erastus G. Harman deed fixed the southern boundary of the land therein conveyed as the top of Buckhorn mountain, and in the deed of March 6, 1880, located the land and conveyed to Russell Stowers and others on the south side of Buckhorn mountain, the northern line being, of course, the Erastus G. Harman line which was fixed as the top of Buckhorn mountain. The description in this deed continues, "on the east by Geo. Steel's west line, and on the west by a survey formerly owned by Hiram Peery."

Neither the lands of Hiram Peery nor George Steel extend north of Buckhorn mountain as contended for by respondents, and it is inconceivable that the lands claimed by complainants extended north of this mountain, not only because W. W. Harman fixed the northern line as Buckhorn mountain, and we have seen what mountain he called Buckhorn, but also because the description bounded on the east by the lands of Steel and on the west by the lands of Peery would not have been an accurate description of the land conveyed to complainants.

In addition to this, if the land of complainants extends north of "Pine Knob," which the evidence shows is a peak in the Buckhorn range, and on to Big Ridge, its eastern and western boundaries north

of Buckhorn mountain are not given as heretofore stated, but in addition it would divide the land conveyed by W. W. Harman to Erastus G. Harman into two tracts, and there is nothing in the description contained in the deed which justifies any other conclusion but that this land was all embraced within one boundary.

On the other hand, if we follow the Davis survey, upon which complainants rely, starting at the point "L", which is conceded by all parties to be correct, the land conveyed by W. W. Harman, by deed of January 30, 1850, to Erastus G. Harman, is that triangular area designated by the letters "L", "B", "O". This result is based upon the assumption, of course, that the ridge at "B" is Buckhorn mountain, because the first call from "L", the conceded starting point, is "south to the top of Buckhorn mountain." The next call is "with the top of Buckhorn mountain, an eastward direction to opposite the Hickman Compton house." If we follow the top of this mountain range which the surveyor took to be Buckhorn mountain, long before we reach any point in this range opposite the house formerly occupied by Hickman Compton, we will have crossed over the southern line of the 1,500 acre tract which is, beyond dispute, the northern boundary line of the tract conveyed by W. W. Harman to Erastus H. Harman, because the south line of the 1,500 acre tract runs along the south side of what respondents call a spur of Big Ridge and what complainants call Buckhorn mountain, and the top of the mountain which is the call in the deed, is to the north of the south side.

There are many other inferences which might be drawn from the descriptions in the various deeds in evidence, which strengthen the contention of the re-

spondents as to the true boundary lines of the land conveyed to W. W. Harman by this deed of January 30, 1850, but enough has been said, we think, to justify the conclusion that the true boundary lies within the area designated by the letters "L," "D," "E," "F."

There are some features of the case which cast some doubt upon the correctness of this conclusion, but the weight of the evidence as a whole supports it strongly.

[2] The burden is upon the complainants to establish their title to the land they contend is theirs, and yet a strict adherence to the calls of their own title papers fails to show that any of the land north of Pine Knob was ever conveyed or intended to be conveyed to them, as we have heretofore pointed out, and when they undertake to point out the boundaries of the tract conveyed by W. W. Harman to Erastus G. Harman, in order to exclude from this boundary the land they claim, they ignore every call in respondent's deed except the starting point "L," in order to do so.

[3] It may be well to refer to one other significant fact in support of the conclusion we have reached. There was filed in the evidence a United States government topographical map of the mountain section and surroundings involved in this controversy. This map shows the elevations in the following order (starting at the north):* East River mountain, then Big Ridge and then Buckhorn mountain, and just to the south of Buckhorn mountain and running about parallel with it is shown Clear Fork creek, Buckhorn mountain being shown as the mountain range *next* to Clear Fork creek. Certainly Buckhorn mountain, as shown on this map, lying next to Clear Fork creek, is Buckhorn as contended for by respondents.

---

* See map *ante*, page 345.

As heretofore stated, the solution of the question lies in the proper location of Buckhorn mountain, and the great preponderance of the evidence and the fair inferences therefrom support the contention of respondents.

We are of opinion, therefore, to reverse the decree of the circuit court, and to enter a decree here dissolving the injunction and dismising complainants' bill.

*Reversed.*